UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| ERICKA LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 2:05-CV-275 PS |
| | ) | |
| THE CITY OF EAST CHICAGO, | ) | |
| INDIANA and GEORGE PABEY, | ) | |
| Individually and in his official capacity | ) | |
| as Mayor of East Chicago, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Plaintiff in this action is a former employee of the City of East Chicago. She alleges that, because of her support of the opponent of the newly elected mayor, she was discharged from her position as staff accountant for the Water Department. Defendants have now filed a Motion for Summary Judgment. Plaintiff has not responded to the Motion. Because Plaintiff has failed to present the Court with evidence to support her claims, the Court finds that no genuine issues of material fact exist and that Defendants are entitled to summary judgment.

**I. FACTUAL BACKGROUND**

Plaintiff Ericka Lewis began working for the city of East Chicago in July 1998 as a staff accountant in the Controller's office. (Lewis Dep. at 21, 26, Def. Ex. 1.) After three years as a staff accountant, Plaintiff accepted the position of accounts payable supervisor, a position that was still within the Controller's department. (*Id.* at 28-29.) In October, 2002, Plaintiff transferred to the Water Department, where she worked as a staff accountant. (*Id.* at 33.) Her duties in this position included bank reconciliation, processing tax payments, assisting

consultants, working on budgets, and other duties "as needed per the supervisor as requested." (*Id.* at 35.)

Additionally, Plaintiff was appointed as temporary clerk for the Board of Public Works due to an illness of the regular clerk. (*Id.* at 39.) In this position, her duties included preparing agendas, distributing information to the board members, faxing notices to newspapers, notifying department heads, and transcribing and distributing minutes of meetings. (*Id.* at 40-41.) Although she was working for the Water Department, her salary was paid from the budget of the Controller's office. (C. Pacurar Aff. ¶ 6, Def. Ex. 2.)

**A.      2003-2004 East Chicago Mayoral Campaign**

In May 2003, incumbent Mayor of East Chicago Robert Pastrick defeated challenger George Pabey. The Indiana Supreme Court, however, voided the results of the election and ordered a special election. *See Pabey v. Pastrick*, 816 N.E.2d 1138, 1154 (Ind. 2004). On October 26, 2004, Pabey defeated Pastrick in the special primary, and in December 2004, Pabey won the general mayoral election and was sworn in as Mayor of East Chicago. (G. Pabey Aff. ¶ 2, Def. Ex. 3.)

Plaintiff actively supported incumbent Pastrick in the mayoral campaign. (E. Lewis Dep. at 85.) During the campaign, Plaintiff spent approximately six hours a week, either after work or on weekends, volunteering for Pastrick. (*Id.* at 113-14.) This volunteer work included performing tasks at the headquarters, such as answering phones, as well as door-to-door campaigning. (*Id.*) In addition to her volunteering for the campaign, Plaintiff also attended rallies and had signs in both her windows and yard. (*Id.* at 86.) She did not contribute more than fifty dollars to the Pastrick campaign. (*Id.* at 113.)

2

Plaintiff believed that most of her co-workers around the city knew of her support of Pastrick.  (*Id.* at 115.)  She stated that they knew of her support because:

> Some would see me at the different fund raisers and helping out.  Anyone who knew where I lived they could see the yard signs.  A couple of years I think I had a bumper sticker on my car.  I think I even had like a pencil—like a little lapel pen.  Things like that.

(*Id.*)

During her deposition, Plaintiff recounted several conversations and incidents that she believed indicated that her support of Pastrick was well known.  She mentioned a conversation with her neighbor, Clifton Rhodes, where Rhodes told her that "everyone knew" of her political activity as well as her salary.  (*Id.* at 89.)  She also recounted an incident in early fall 2003 – she was returning home, and Pabey and several other gentlemen, presumably engaging in door-to-door campaigning, were standing on the street in front of her home where she had signs supporting Pastrick.  (*Id.* at 86-88.)  She did not speak to them, but simply pulled inside her driveway and went inside her home.  (*Id.* at 88.)  Furthermore, Plaintiff cited a rambling conversation with a laborer at the Water Department, Terrence Lay, where Lay purported to know Plaintiff's salary and told her that when he, a Pabey supporter, became a department head, she could be his secretary.  (*Id.* at 93-97.)

Plaintiff, however, did not provide evidence showing that Mayor Pabey or Charlie Pacurar, the City Controller who terminated her, had knowledge of her political activities.  (*See e.g.*, *id.* at 118-119.)  Both Pabey and Pacurar stated that they were unaware of Plaintiff's campaigning activities for Pastrick.  (G. Pabey Aff. ¶ 4; C. Pacurer Aff. ¶ 7.)

3

**B.    Plaintiff's Termination**

After Pabey took office, his administration determined that the city was in severe financial trouble and that swift, corrective action was needed. (G. Pabey Aff. ¶ 3.) Specifically, the new administration discovered that the City was over five million dollars in debt with approximately $800,000 of that debt attributable to the Water Department, where Plaintiff worked. (*Id.*) In addition, the City was unable to meet payroll demands or conduct day-to-day operations. (*Id.*) As a result, Pabey directed Pacurar to reduce payroll and related expenses. (*Id.*; C. Pacurer Aff. ¶¶ 5-6.)

On January 5, 2005, Plaintiff was called in to Pacurar's office. (E. Lewis Dep. at 45.) Before this meeting, Plaintiff had never met Pacurar or had a conversation with him. (*Id.* at 47.) Pacurer was initially confused regarding what position Plaintiff actually held, with Pacurar believing that Plaintiff was the secretary to the recently terminated Director of Finance, Mr. Weems. (*Id.* at 48-49.) After Plaintiff informed Pacurar that she was not Mr. Weems's secretary and instead was a staff accountant at the Water Department, Pacurar indicated that he would get back to her. (*Id.* at 49.)

Two days later, on January 7, 2005, Pacurar informed Plaintiff that he had done some checking regarding her position. (*Id.* at 53.) According to Plaintiff, he told her that, because her position did not exist, she was terminated, retroactive to January 5, 2005. (*Id.* at 53.) Pacurar stated that he discovered that, even though Plaintiff was working for the Water Department, her salary was paid out of the Controller's Office budget. (C. Pacurer ¶ 6.) Due to the City's financial situation and the fact that the Water Department had no room in its budget for Plaintiff's position, Pacurar made the decision to terminate her. (*Id.*) Other employees of the

Water Department were also terminated or decided to retire or quit.  (E. Lewis Dep. at 107-09.)

On July 15, 2005, Plaintiff filed this suit against Pabey and the City of East Chicago claiming that her termination was unconstitutionally motivated by her political associations.  (Compl. ¶ 12.)

C.  **Plaintiff's Contacts with Pabey and Pacurar**

Prior to her termination, Plaintiff had only very limited contact with Pabey.  Plaintiff testified that the first encounter occurred several years ago when Pabey was a councilman and she briefly explained budgetary and other processes to him.  (E. Lewis Dep. at 80-81.)  This discussion was similar to those she had with other city councilmen who were unfamiliar with certain processes.  (*Id.*)  Other than this encounter, Plaintiff only recalled exchanging general pleasantries with Pabey when he was a councilman and congratulating him after he took office.  (*Id.* at 82-83.)  During the campaign itself, she recalled only one circumstance – where she merely saw Pabey outside her home conducting door-to-door campaigning.  (*Id.* at 86-87.)

By Plaintiff's own admission, she never discussed her political views with Pabey.  (*Id.* at 84.)  She also never told Pabey that she voted for Pastrick.  (*Id.* at 85.)  She never criticized the way Pabey ran the city during her conversations with him.  (*Id.* at 84.)  Furthermore, she never discussed her termination with Pabey.  (*Id.*).

As to Pacurar, Plaintiff had never met him prior to their initial encounter on January 5, 2005.  (*Id.* at 47.)  Only one additional conversation ensued between Plaintiff and Pacurar during which Pacurar told Plaintiff that she was indeed being terminated.  (*Id.* at 79.)

## II.  DISCUSSION

Summary judgment is appropriate "if the pleadings, depositions, answers to

5

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party seeking summary judgment carries the initial burden of demonstrating an absence of evidence to support the position of the non-moving party. *Doe v. R.R. Donnelley & Sons, Co.*, 42 F.3d 439, 443 (7th Cir. 1994).  The non-moving party must then set forth specific facts showing that there is a genuine issue of material fact and that the moving party is not entitled to a judgment as a matter of law.  *Anderson v. Liberty Lobby*, 447 U.S. 242, 252 (1986).  A genuine dispute about material fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

     Northern District of Indiana Local Rule 56.1 sets forth specific requirements for both the party moving for summary judgment as well as for the non-moving party.  Because Plaintiff has not responded to Defendants' Motion for Summary Judgment, the local rule comes into play here.  Local Rule 56.1 directs the moving party to file a "Statement of Material Facts" as to which "the moving party contends there is no genuine issue."  N.D. Ind. L.R. 56.1(a).  The party opposing a summary judgment motion then must respond to each of the purported undisputed facts with a "Statement of Genuine Issues" setting forth "all material facts as to which it is contended there exists a genuine issue necessary to be litigated."  *Id.*  The Local Rule specifically states that "the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the 'Statement of Genuine Issues' filed in opposition to the motion[.]"  N.D. Ind. L.R. 56.1(b); *see also Thiele v. Norfolk & Western Ry. Co.*, 873 F.

6

Supp. 1240, 1243 (N.D. Ind. 1994).

In this case, given that Plaintiff has not filed any response to Defendants' Motion or disputed any of the facts set forth in the Defendants' Statement of Material Facts (despite being given ample opportunity to do so), Defendants' allegations in their Rule 56.1 Statement of Material Facts are deemed admitted. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission.").

Nevertheless, even when an opposing party completely fails to respond to a summary judgment motion, "Rule 56(e) permits judgment for the moving party only '*if appropriate* - that is, if the motion demonstrates that there is no genuine issue of material fact *and* that the movant is entitled to judgment as a matter of law.'" *Johnson v. Gudmundsson*, 35 F.3d 1104, 1112 (7th Cir. 1994) (quoting *Tobey v. Extel/JWP, Inc.* 985 F.2d 330, 332 (7th Cir. 1993)) (emphasis in original). Thus, even where all of the material facts are undisputed, the Court still must ascertain that judgment is proper as a matter of governing law. *Id.* (citations and internal quotations omitted).

**A.     Plaintiff's Section 1983 Claim**

**1.     Plaintiff Cannot Establish a *Prima Facie* Case**

To make out a *prima facie* case for a political firing case, the plaintiff must show two things: first, that her conduct was constitutionally protected; and second, that her protected conduct was a substantial or motivating factor in the employment decision. *Hall v. Babb*, 389 F.3d 758, 762 (7th Cir. 2004); *see also Nelms v. Modisett*, 153 F.3d 815, 818 (7th Cir. 1998). It is not enough to show that the plaintiff was of a different political persuasion than the decision

7

makers or the successful applicant. *Nelms*, 153 F.3d at 818.  There is no dispute here as to whether Plaintiff's activity was protected.  It was.  However, to prove that Defendants were improperly motivated by political affiliation, Plaintiff must first prove that Defendants in fact knew of her affiliation. *Id.* at 819.

Here, there is scant evidence to show that either Pabey or Parcurar knew of Plaintiff's political activities or affiliation.  Although Plaintiff testified that "everyone knew" she supported Pastrick because of her yard signs and political activity, this is not probative.  Plaintiff must show that the decision makers had actual knowledge of her political affiliation and "cannot rely on the speculation or opinions of non-decision makers as proof" that Defendants fired her for her political affiliation. *Nelms*, 153 F.3d at 819.  "Stray remarks in the workplace . . . cannot justify requiring an employer to prove that its decisions were based on legitimate criteria.  Nor can statements made by non-decision makers or statements made by decision makers unrelated to the decisional process itself suffice to satisfy the plaintiff's burden in this regard." *Id.* (citation and internal quotations omitted).

Plaintiff has not established that the decision makers knew of her political affiliation. Plaintiff asserted that decision makers Pabey and Pacurar knew because "everyone knew" that she was a Pastrick supporter by virtue of her volunteer work and yard signs.  But Plaintiff acknowledged that she never spoke to Pacurar before the two conversations in January 2005 regarding her position.  Without proof that he knew of her political affiliation, she cannot establish that he terminated her because of it.  Moreover, Plaintiff had very limited contact with Pabey prior to her termination and only in the ordinary course of business.  She acknowledged that they never discussed her affiliation and that she never criticized his administration of the

8

city in these conversations. There is simply no evidence that Plaintiff's political affiliation was ever raised as an issue or even mentioned at all.

Plaintiff asserted during her deposition that Pabey had knowledge that she supported Pastrick by virtue of seeing signs in her yard. However, she offered no evidence that Pabey even knew where she lived, except the broad statement of a neighbor that "everyone knew." These assertions do not establish that the decision makers had knowledge of her political affiliation. Accordingly, Plaintiff is unable to make a *prima facie* case, and her claim must fail.

### 2. Legitimate, Non-Political Reason for Termination

Even if Plaintiff had established a *prima facie* case, summary judgment would still be warranted as Defendants have produced a legitimate, non-political reason for her termination – severe budgetary issues. Once a plaintiff has established a *prima facie* case in a political discharge case, the burden shifts to the defendants to prove by a preponderance of the evidence that they had a legitimate, non-political reason for firing the plaintiff in order to avoid liability. *See Nelms*, 153 F.3d at 818.

Here, Defendants have proffered a legitimate, non-political reason for Plaintiff's termination – the need to swiftly reduce payroll and other expenses for the City itself and specifically the Water Department for which Plaintiff worked. Plaintiff, who did not respond to Defendants' Motion for Summary Judgment, has failed to provide any contrary evidence to this non-political reason for terminating Plaintiff.

### B. Plaintiff's State Law Claims

The Indiana Tort Claims Act ("ITCA") provides that a claim against a political subdivision is barred unless notice is filed with the governing body within 180 days after the loss

9

occurs. I.C. § 34-13-3-8(a). The Indiana Supreme Court has specifically held that "a wrongful discharge claim is a tort under Indiana law governed by the ITCA if a government unit or official is the defendant." *Cantrell v. Morris*, 849 N.E.2d 488, 494 (Ind. 2006) (citing *Holtz v. Board of Commissioners of Elkhart County*, 560 N.E.2d 645, 647-48 (Ind. 1990)). Here, Defendants provide an uncontested affidavit from Enedina Rodriguez, paralegal for the Law Department of the City of East Chicago, who is responsible for receiving legal notices on behalf of East Chicago. (E. Rodriguez Aff. ¶ 3, Def. Ex. 4.) Rodriguez testified that the City of East Chicago has not received any notice from Plaintiff as required by the ITCA. (*Id.* at ¶ 4.) As more than 180 days has elapsed since Plaintiff alleges that she was wrongfully terminated, her state law claims are barred for failure to comply with the ITCA.

### III.  CONCLUSION

For the above reasons, Defendants' Motion for Summary Judgment [DE 43] is **GRANTED**. The clerk is **DIRECTED** to terminate this matter. All further settings in this case are **VACATED**. Defendants' Motion to Vacate pretrial and Trial Dates [DE 50] is therefore **DENIED AS MOOT**.

**SO ORDERED.**

ENTERED: December 22, 2006

                                                         s/ Philip P. Simon
                                                         PHILIP P. SIMON, JUDGE
                                                         UNITED STATES DISTRICT COURT